Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/21/2026 08:22 AM CDT

State of Nebraska, appellee, v. Edward C.
Blanton, Jr., appellant.

___ N.W.3d ___

Filed July 21, 2026.    No. A-25-598.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. ____: ____. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.

4. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

5. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance.

6. **Intent: Words and Phrases.** "Intent" is generally defined as the state of mind accompanying an act.

7. **Criminal Law: Intent: Circumstantial Evidence.** When an element of a crime involves existence of a defendant's mental process or other state of mind of the defendant, such elements may be proved by circumstantial evidence.

8. **Intent: Words and Phrases.** "Intentionally" means willfully or purposely, and not accidentally or involuntarily.

9. **Criminal Law: Words and Phrases.** The meaning of "knowledge" in a criminal action can vary with the context in which it is used, but it commonly imports a perception of facts requisite to make up a crime.

10. **Intent: Circumstantial Evidence.** Knowledge, like intent, may be inferred from the circumstances surrounding the act.

11. **Controlled Substances.** Under the criminal narcotics statutes, possession may be either actual or constructive.

12. **Evidence: Proof: Controlled Substances: Weapons.** Constructive possession of a prohibited drug or weapon may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it.

13. **Controlled Substances: Evidence: Proof.** The mere presence of a defendant at a place where a controlled substance is found is not sufficient to show constructive possession; instead, the evidence must show facts and circumstances which affirmatively link the defendant to the controlled substance so as to suggest that he or she knew of it and exercised control over it.

14. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors and applicable legal principles.

15. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

16. ____. The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and of all the facts and circumstances surrounding the defendant's life.

17. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must, standing alone, specifically allege what conduct constituted deficient performance.

18. **Effectiveness of Counsel: Records: Appeal and Error.** Once a claim of ineffective assistance of counsel is raised on direct appeal, an appellate court will determine whether the record on appeal is sufficient to review the merits of the claim.

19. \_\_\_\_ : \_\_\_\_ : \_\_\_\_. The record on direct appeal is sufficient to review a claim of ineffective assistance of counsel if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

20. \_\_\_\_ : \_\_\_\_ : \_\_\_\_. While the assigned error must specifically state the conduct claimed as deficient performance, the argument section of appellant's brief should elaborate on that assignment by discussing legal authority and its application to the trial record.

21. **Appeal and Error.** An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.

22. \_\_\_\_. Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant has failed to include a specific argument sufficient to raise a claim.

23. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

24. \_\_\_\_ : \_\_\_\_. Claims of alleged failures by counsel respecting motions must set forth on what grounds a motion should have been made or what information was omitted from a motion that was made.

25. **Effectiveness of Counsel: Motions to Suppress: Appeal and Error.** Allegations on direct appeal of ineffective assistance of trial counsel for failing to make a motion under some broad category, such as a motion to suppress or a motion to quash, without more detail as to the subject of and grounds for the motion, are mere placeholders.

Appeal from the District Court for Lancaster County: Matthew O. Mellor, Judge. Affirmed.

Angelica W. McClure, of Kotik & McClure Law, for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

Riedmann, Chief Judge, and Bishop and Freeman, Judges.

Freeman, Judge.

# I. INTRODUCTION

Edward C. Blanton, Jr., appeals from his jury convictions in the Lancaster County District Court for possession of a controlled substance with intent to distribute (fentanyl) and possession of a controlled substance (cocaine). Blanton argues that the evidence was insufficient to support his convictions and that his sentences are excessive. He also asserts that his trial counsel was ineffective. For the reasons stated herein, we affirm Blanton's convictions and sentences.

# II. BACKGROUND

In June 2024, investigators with the Lincoln-Lancaster County Narcotics Task Force executed a search warrant at Blanton's apartment as part of an ongoing investigation into the distribution of controlled substances. Blanton shared the apartment with his brother Xavier Blanton; Xavier's girlfriend, Stephanie Bartels; and Jazmin King. During the search, the task force located several controlled substances throughout the apartment, including fentanyl and cocaine.

In August 2024, Blanton was charged by information with possession of a firearm with a "FEL 2" drug violation, a Class ID felony; possession of a controlled substance with intent to distribute (fentanyl), a Class II felony; and possession of a controlled substance (cocaine), a Class IV felony. An amended information later removed the possession of a firearm charge.

## 1. Trial

A jury trial was held over 3 days in April 2025. At trial, the State presented testimony from law enforcement and forensic technicians to establish the facts surrounding the June 2024 search warrant.

Lincoln Police Department investigator Jesse Tenney testified that he began investigating suspected fentanyl sales from Blanton's apartment on April 25, 2024, after receiving

information from a confidential informant. The informant was pulled over and arrested for possession of fentanyl. The informant reported routinely purchasing fentanyl from Blanton's apartment through Bartels. According to Tenney, the informant arranged the purchases through "Facebook Messenger." Based on this information, Tenney organized three controlled purchases through the informant. During each purchase, the informant obtained fentanyl pills from Bartels at Blanton's apartment.

Tenney further testified that during the investigation, he confirmed that the apartment was occupied by Blanton, Xavier, and Bartels. The informant also identified a fourth female occupant, but Tenney did not confirm her identity as King until after the task force executed the search. During surveillance, investigators observed several individuals making "short-term stops" at the apartment.

Lincoln Police Department investigator Forrest Dalton testified that he became involved in the investigation in early June 2024 following a suspected fentanyl overdose death. The task force searched the decedent's cell phone and discovered messages showing that the decedent had contacted Bartels to purchase fentanyl. Using the phone number recovered from the device, Dalton conducted an undercover investigation to facilitate controlled purchases of fentanyl from Bartels. Dalton testified that he successfully purchased fentanyl from Blanton's apartment on three occasions. Bartels coordinated each of the purchases with Dalton via Facebook Messenger; however, Xavier was the person who physically met with Dalton and handed him the fentanyl. The State offered as exhibits the text exchanges between Dalton and Bartels, arranging each sale as evidence.

The task force executed a search warrant at Blanton's apartment on June 27, 2024. Tenney testified that he apprehended Xavier and Bartels as they arrived at the apartment before investigators served a no-knock search warrant. No other individuals were located inside the apartment.

Multiple investigators testified regarding the controlled substances and other items recovered during the search. In the kitchen, a common area shared by all occupants, investigators located 14.6 grams of blue fentanyl pills in a metal tin; seven white pills, later identified as methamphetamine and eutylone; and a "rolling tray" with marijuana residue.

In Blanton's bedroom, investigators located mail addressed to Blanton and a firearm registered in Blanton's name. Investigators also recovered a backpack containing a plastic bag with 3 grams of cocaine and approximately 1.8 grams of marijuana.

Upon further search, investigators recovered a variety of illicit items in the other occupants' bedrooms connected to the distribution of fentanyl and other controlled substances. In the bedroom shared by Xavier and Bartels, investigators located 92.5 grams of fentanyl pills, a large quantity of marijuana packaged in various containers, and a bag containing approximately $2,220 in cash. A bedside drawer contained unused baggies, a digital scale, two "marijuana grinders," 77.8 grams of cocaine, $160 in cash, and a small amount of hydrocodone and oxycodone pills. Investigators also recovered a receipt for $1,300 worth of money orders issued to Blanton, Xavier, and King. In an upstairs bedroom belonging to King, investigators located a package of "THC Coco Puffs," two separate vials containing "THC wax," and a silicone container holding methamphetamine.

A Nebraska State Patrol Crime Laboratory technician testified that laboratory testing on the substances seized from the apartment confirmed the presence of controlled substances.

Investigators testified that after executing the search warrant, they located Blanton at his workplace and arrested him. Blanton's phone was seized during his arrest, and Dalton later obtained a warrant to search its contents. An electronic evidence unit officer with the Lincoln Police Department performed the forensic extraction and provided the results

to Dalton. The phone data was admitted at trial as exhibits 8 and 9.

Exhibit 8 contained text messages regarding Blanton's arrangements to meet an individual to exchange an unspecified item for $60. One message stated, "[Xavier] just told me what you tryna get." Tenney testified that during his investigation, Xavier sold fentanyl during controlled purchases. Based on this observation, Tenney believed Blanton knew about Xavier's fentanyl sales and assisted in facilitating transactions, such as the one evidenced by exhibit 8.

Exhibit 9 contained text messages between Blanton and Xavier discussing certain individuals that visited the apartment and Blanton's meeting individuals elsewhere on Xavier's behalf. In one exchange, Xavier instructed Blanton to make a delivery to a neighbor. Xavier wrote, "Ole girl waiting on you next door; she Apple payed me already." Blanton replied, "[H]ow much," and Xavier responded, "She getting 3 for 200." Tenney testified that, based on his training and experience with narcotic prices, he did believe this message referred to the sale of cocaine.

At the close of the State's case, Blanton moved for a directed verdict, arguing the State failed to present sufficient evidence. The court overruled the motion and, after Blanton rested, submitted the case to the jury.

## 2. VERDICTS AND SENTENCING

On April 16, 2025, the jury returned a guilty verdict on each count of the amended information. The district court accepted the jury's verdicts and found Blanton guilty. The court ordered a presentence investigation report (PSR) and scheduled sentencing.

At the sentencing hearing, the district court sentenced Blanton to 8 to 10 years' imprisonment for possession with intent to deliver and to 2 to 2 years' imprisonment for possession of a controlled substance. The court ordered the sentences to run concurrently to each other, but consecutively to

any other commitment Blanton may have been serving. The court granted Blanton credit for 19 days' served in custody.

Blanton appeals.

## III. ASSIGNMENTS OF ERROR

Blanton assigns, reordered and restated, that the district court erred in (1) finding sufficient evidence to sustain his convictions and (2) imposing excessive sentences. Blanton also assigns that (3) his trial counsel was ineffective for (a) failing to call multiple witnesses on Blanton's behalf, (b) failing to offer an exhibit to support Blanton's case, (c) failing to challenge the jury array and not filing a motion to quash the panel, and (d) failing to "conflict[] out" as the sentencing attorney.

## IV. STANDARD OF REVIEW

[1] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Liech*, 320 Neb. 843, 30 N.W.3d 847 (2026). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

[2,3] An appellate court will also not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id*. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id*.

[4,5] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Lopez*, 321 Neb. 118, 32 N.W.3d 868 (2026). In reviewing claims of ineffective assistance of counsel on direct appeal,

an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance. *Id*.

## V. ANALYSIS

### 1. Sufficiency of Evidence

Blanton assigns that the evidence was insufficient to support his convictions for possession with intent to deliver and possession of a controlled substance. Blanton argues that the State failed to prove that he delivered fentanyl, because the text messages and other evidence did not identify what was being sold. He further argues that the State failed to prove he possessed cocaine, because the cocaine found in his room was poorly documented when it was seized by investigators and mixed with other cocaine evidence recovered from the apartment. We disagree.

Blanton was convicted of possession with intent to distribute fentanyl. Possession with intent to distribute is set out in Neb. Rev. Stat. § 28-416(1) (Cum. Supp. 2024). The relevant portion provides: "[I]t shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance." See § 28-416(1).

[6-10] "Intent" is generally defined as the state of mind accompanying an act. *State v. Moore*, 317 Neb. 493, 10 N.W.3d 531 (2024). When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements may be proved by circumstantial evidence. *State v. Liech, supra*. "Intentionally" means willfully or purposely, and not accidentally or involuntarily. *State v. Moore, supra*. The meaning of "knowledge" in a criminal action can vary with the context in which it is used, but it commonly imports a perception of facts requisite to make up a crime. *Id*. Knowledge, like intent, may be inferred from the circumstances surrounding the act. *Id*.

[11-13] For crimes under the criminal narcotics statutes, Nebraska law recognizes both actual and constructive possession. See *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021). Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it. *Id*. Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. *State v. Sherrod*, 27 Neb. App. 435, 932 N.W.2d 880 (2019). Instead, "the evidence must show facts and circumstances which affirmatively link [the suspect] to the [controlled substance] so as to suggest that he [or she] knew of it and exercised control over it." *Id*. at 442, 932 N.W.2d at 888.

Applying these principles, the jury could reasonably find that Blanton constructively possessed and distributed fentanyl. Investigators recovered 14.6 grams of fentanyl pills from the kitchen, a common area of the residence. A forensic extraction of Blanton's phone revealed text messages in which he arranged a $60 transaction and indicated that Xavier had informed him of what the buyer was attempting to purchase. Investigators had previously conducted six controlled purchases of fentanyl from Xavier. From this evidence, the jury could reasonably infer that the arranged transaction involved fentanyl and that Blanton knowingly participated in its distribution.

Blanton was also charged with possession of cocaine, in violation of § 28-416(3). Section 28-416(3) states, in relevant part: "A person knowingly or intentionally possessing a controlled substance . . . shall be guilty of a Class IV felony."

Here, investigators located a backpack containing cocaine in Blanton's bedroom. Blanton's registered firearm was located in the bedroom, as were several pieces of his mail. Text messages between Blanton and Xavier referenced a transaction with the neighbor for "3 for $200." Tenney testified that, based on the amount, this message could likely refer to a cocaine sale. This evidence, combined with the location of the

backpack in Blanton's room, permitted the jury to reasonably conclude that Blanton exercised dominion and control over the cocaine.

Accordingly, this assignment of error fails.

## 2. Excessive Sentences

Blanton assigns that the district court erred in imposing excessive sentences. Blanton argues that the court failed to adequately consider each of the sentencing factors, including his age, criminal history, past trauma, and physical health.

Blanton was sentenced to 8 to 10 years' imprisonment for possession with intent to deliver, a Class II felony, and to 2 to 2 years' imprisonment for possession of a controlled substance, a Class IV felony. A Class II felony is punishable by a maximum of 50 years' imprisonment and a minimum of 1 year's imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). A Class IV felony is punishable by a maximum of 2 years' imprisonment and 12 months' post-release supervision or a $10,000 fine, or both. *Id*. Thus, Blanton's sentences are within the statutory limits.

[14,15] Nevertheless, Blanton argues that the district court failed to consider the appropriate sentencing factors. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors and applicable legal principles. *State v. Lopez*, 321 Neb. 118, 32 N.W.3d 868 (2026). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*.

[16] The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's

observation of the defendant's demeanor and attitude and of all the facts and circumstances surrounding the defendant's life. *Id*. We further note that a sentencing court is not required to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

Here, the district court stated that it reviewed the PSR, which included information concerning all the factors to be considered by a sentencing court, including the mitigating factors argued by Blanton. See *id*.

According to the PSR, Blanton was 33 years old and single, with one dependent. Blanton's prior criminal history includes convictions for having improper registration, theft by shoplifting, no proof of financial responsibility, failure to appear in court, possession of marijuana, driving with a suspended license, failure to signal a turn, operating a motor vehicle without headlights, and violating the speed limit.

In addition, Blanton scored in the medium-to-high-risk range to reoffend on the overall "Level of Service/Case Management Inventory" assessment. Blanton scored in the high-risk range in the domains of leisure/recreation, alcohol/drug problems, and procriminal attitude; in the medium-risk range in the domains of companions and antisocial patterns; in the low-risk range in the domains of criminal history and family/marital; and in the very low-risk range in the domain of education/employment. The PSR also reflects that, as a teenager, Blanton experienced a house fire and the death of his estranged father. Blanton also reported that he was extensively bullied by his siblings and suffered several concussions throughout his childhood.

At the sentencing hearing, the district court discussed the circumstances of the present case, noting that Blanton was still unwilling to acknowledge his participation in the distribution of a controlled substance. In its order, the court stated that Blanton was not a suitable candidate for probation, that the risk was substantial that he would engage in additional

criminal conduct during any probationary period, and that a sentence less than incarceration would depreciate the seriousness of his crime or would promote disrespect for the law.

Based upon the record before us, we find no abuse of discretion in the sentences imposed. This assignment fails.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Blanton asserts that he was denied his right to effective counsel under the Sixth Amendment to the U.S. Constitution and Neb. Const. art. 1, § 11. Before addressing his specific claims, we begin with a review of the general principles governing ineffective assistance of counsel.

[17] The Nebraska Supreme Court held in *State v. Rupp*, 320 Neb. 502, 523, 28 N.W.3d 74, 89 (2025), that assignments of error on direct appeal regarding ineffective assistance of trial counsel must, "standing alone," specifically allege what conduct constituted deficient performance. An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. See *State v. Rupp, supra*.

[18,19] Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. See *id*. The record on appeal is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025).

[20-22] While the assigned error must specifically state the conduct claimed as deficient performance, the argument section of appellant's brief should elaborate on that assignment

by discussing legal authority and its application to the trial record. See *State v. Rupp, supra*. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). Likewise, where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant has failed to include a specific argument sufficient to raise a claim. *Id.*

### (a) Failure to Call Multiple Witnesses

Blanton first assigns that "[t]rial counsel was ineffective for not calling multiple witnesses on [his] behalf." Regardless of Blanton's argument, we do not address this claim.

Here, we find that Blanton's assignment of error was not stated with the requisite level of specificity. Blanton's assigned error fails to identify the witnesses by name or description in the assignment. In *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025), the Supreme Court found that the appellant's assignment of error that referenced the word "witnesses," without any further description or detail, was not sufficiently stated for the purposes of an ineffective assistance of counsel claim. Likewise, Blanton's claim is not preserved for postconviction review.

### (b) Failure to Offer Exhibit

Blanton next assigns that "[t]rial counsel was ineffective for not offering an exhibit to support [Blanton's] case." We find this error is insufficiently assigned.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Kruger, supra*. Here, Blanton fails to identify or describe the exhibit that was not

offered by his trial counsel. Blanton's assigned error lacks the required particularity, so we decline to review this claim.

### (c) Failure to Challenge Jury and File Motion to Quash

Blanton further assigns that "[t]rial counsel was ineffective for not challenging the jury array and not filing a motion to quash the panel." Blanton then argues that counsel should have challenged the jury array "for not having any persons of color on the panel." Brief for appellant at 25. We decline to review this claim.

[23,24] *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019), *disapproved on other grounds, State v. Hagens, supra*, instructs "assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity." *State v. Rupp*, 320 Neb. 502, 524, 28 N.W.3d 74, 90 (2025), further explained that "[c]laims of alleged failures by counsel respecting motions must set forth on what grounds a motion should have been made or what information was omitted from a motion that was made."

Here, Blanton does not specify the grounds for challenging the jury or filing a motion to quash. Although he argues that counsel should have challenged the jury array "for not having any persons of color on the panel," brief for appellant at 25, he does not include this basis in his assignment of error. This renders his allegation insufficient.

[25] Allegations on direct appeal of ineffective assistance of trial counsel for failing to make a motion under some broad category, such as a motion to suppress or a motion to quash, without more detail as to the subject of and grounds for the motion, are mere placeholders. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). But cf. *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024) (addressing merits of appellant's claim that trial counsel was ineffective for failing

to file motion to quash amended direct information); *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023) (addressing merits of appellant's claim that trial counsel was ineffective for failing to file motion to quash amended complaint).

Consequently, this claim is not preserved for postconviction review.

### (d) Failure to Identify Conflict of Interest

Blanton further assigns that trial counsel was ineffective for "not conflicting out as sentencing attorney."

This assignment lacks the requisite level of specificity required for ineffective assistance of counsel claims. His claim fails to identify the conflict of interest. As previously mentioned, assignments of error on direct appeal must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. See *State v. Mrza, supra.* We therefore do not address this claim, and the assignment of error fails.

## VI. CONCLUSION

We find there was sufficient evidence to support Blanton's convictions, the district court did not abuse its discretion in the sentences imposed, and Blanton's trial counsel was not ineffective. We affirm the judgment of the district court.

Affirmed.